IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

------------------------------------------------------------X
MARY CONNER, Individually and as the
representative of a class of similarly situated persons,

                                                 Case No. 3:22-cv-

                       Plaintiff,

               - against -

K & J MANAGEMENT, LLC and
MILKBREAD, LLC,

                       Defendants.
------------------------------------------------------------X

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1. Plaintiff, Mary Conner ("Plaintiff" or "Conner"), brings this action on behalf of herself and all other persons similarly situated against K & J Management, LLC and Milkbread, LLC (hereinafter jointly referred to as "Milkbread" or "Defendants"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report.

1

4. Plaintiff brings this civil rights action against Milkbread for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons. Defendants is denying blind and visually-impaired persons throughout the United States with equal access to the goods and services Milkbread provides to their non-disabled customers through http//:www.Milkbread.com (hereinafter "Milkbread.com" or "the website"). Defendants' denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. Milkbread.com provides to the public a wide array of the goods, services, price specials, employment opportunities and other programs offered by Milkbread. Yet, Milkbread.com contains thousands of access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the website. Thus, Milkbread excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind and visually-impaired persons to fully and independently access a variety of services.

6. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website means that blind people are excluded from experiencing transacting with Defendants' website and from purchasing goods or services from Defendants' website.

7. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendants has chosen to rely on an exclusively visual interface. Milkbread's sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on Milkbread.com.

8. By failing to make the website accessible to blind persons, Defendants is violating basic equal access requirements under both state and federal law.

9. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons.

10. Plaintiff relocated to Charlotte, NC about a year ago and is eager to explore the City and learn about its diverse and inventive food scene. She learned that Milkbread is a new food establishment opened by one of Charlotte's most renowned restauranteurs. Plaintiff browsed and intended to learn about the menu offerings at Milkbread and intended to make a purchase of a Milkbread cap on Milkbread.com. However, unless Defendants remedies the numerous access barriers on its website, Plaintiff and Class members will continue to be unable to independently navigate, browse, use, and complete a transaction on Milkbread.com.

11. Because Defendants' website, Milkbread.com, is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Milkbread's policies, practices, and procedures to that Defendants' website will

3

become and remain accessible to blind and visually-impaired consumers. This complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 133(d)(2).

13. This Court also has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under State Law.

14. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendants conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

15. Defendants is registered to do business in the State of North Carolina and has been conducting business in North Carolina, including in this District. Defendants maintains Brick-and-mortar places of accommodation in this District which are subject to personal jurisdiction in this District. Defendants also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District.

## PARTIES

16. Plaintiff, is and has been at all relevant times a resident of Mecklenburg County, State of North Carolina.

17. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff, Mary Conner, cannot use a computer without the assistance of screen reader software. Plaintiff, Mary Conner, has been denied the full enjoyment of the facilities, goods and services of Milkbread.com, as well as to the facilities, goods and services of Defendants' brick and mortar locations, as a result of accessibility barriers on Milkbread.com.

18. Defendant, K & J Management, LLC, is a North Carolina Domestic Limited Liability Company with its principal place of business located in the State of North Carolina, County of Mecklenburg.

19. Defendant, Milkbread, LLC, is a North Carolina Domestic Limited Liability Company with its principal place of business located in the State of North Carolina, County of Mecklenburg.

20. Defendants own and operate Milkbread Restaurants (hereinafter, "Milkbread Restaurants" or "Restaurant"), which are a place of public accommodation. Milkbread Restaurants are located in Mecklenburg County, NC.

21. Milkbread Restaurants provide to the public important and enjoyable goods and services such as food, beverage, and a shop offering merchandise and gift cards, amongst the many goods and services offered by the Milkbread. Defendants also provides to the public a website known as Milkbread.com which provides consumers with access to an array of goods and services offered to the public by the Milkbread Restaurants, including, the ability to the ability to view food and beverage menus, order food for pickup, and purchase merchandise and

gift cards – all with the click of a mouse. The Website also lets the visitor learn about Milkbread and information about the Restaurants' locations, and times of operation, among other features. The inaccessibility of Milkbread.com has deterred Plaintiff from being able to read the menu and from making a purchase of the Milkbread cap.

22. Defendants' locations are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendants' website is a service, privilege, or advantage that is heavily integrated with Defendants' physical Restaurant and operates as a gateway thereto.

## NATURE OF THE CASE

23. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

24. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

25. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

26. Blind users of Windows operating system-enabled computers and devises have several screen-reading software programs available to them. Job Access With Speech, otherwise

known as "JAWS" is currently the most popular, separately purchase and downloaded screen-reading software program available for blind computer users.

27. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.0 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader.

## FACTUAL ALLEGATIONS

28. Defendants operate Milkbread Restaurants in North Carolina and provides food, beverage, merchandise, and gift cards, amongst other products and services.

29. Milkbread.com is a service and benefit offered by Milkbread in North Carolina and throughout the United States. Milkbread.com is owned, controlled and/or operated by Milkbread.

30. Milkbread.com is a commercial website that offers products and services for

7

online sale that are available in the Milkbread Restaurants. The online Restaurant allows the users to browse menu items, order food and drinks for delivery or pickup, purchase merchandise and gift cards, and perform a variety of other functions.

31. Among the features offered by Milkbread.com are the following:

(a) learning about Restaurant information including, allowing persons who wish to visit Milkbread to learn their locations, hours of operation, and phone numbers;

(b) an online Restaurant, allowing customers to view the food and drink menu, and an online store allowing customers to make purchases of merchandise and gift cards, amongst other products; and

(c) learning about the company, learning about career opportunities, and learning about catering.

32. This case arises out of Milkbread's policy and practice of denying the blind access to Milkbread.com, including the goods and services offered by Milkbread through Milkbread.com. Due to Milkbread's failure and refusal to remove access barriers to Milkbread.com, blind individuals have been and are being denied equal access to Milkbread, as well as to the numerous goods, services and benefits offered to the public through Milkbread.com.

33. Milkbread denies the blind access to goods, services and information made available through Milkbread.com by preventing them from freely navigating Milkbread.com.

34. Milkbread.com contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down menus, the lack of navigation links, the lack of adequate prompting and labeling, the denial of keyboard access, empty links that contain no text, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

35. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on Milkbread.com that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user). As a result, Plaintiff and blind Milkbread.com customers are unable to determine what is on the website, browse the website or investigate Milkbread's web pages and/or make purchases.

36. Milkbread.com also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. On a shopping site such as Milkbread.com, these forms include search fields to locate restaurant locations, search fields used to locate products, search fields used to select quantity, and fields used to fill-out personal information, including address and credit card information. Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendants' merchandise and locations, nor can they enter their personal identification and financial information with confidence and security.

37. Specifically, when Plaintiff, using JAWS, attempted to make a purchase, she encountered the following problems:

1. Plaintiff did not receive verbal notification when she attempted to add items to the shopping cart. When selecting the "Add to Cart" button nothing is announced and Plaintiff did not know if the button functions. Sighted persons can see a number appear on the shopping cart symbol at the bottom of the page, but Plaintiff was not aware of this action and had no idea if the button functions or not. This is a critical error.

9

2. Plaintiff was unable to read the menu. When she selected the Menu link at the top of the page, a new page opened, but she was not aware of any menus on the page. Her screen reader skipped the menu without reading it and only announced the image of doughnuts at the bottom of the page. Consequently, Plaintiff had no idea what food and drink items appear on the menu. This is a critical error.

Consequently, Plaintiff and blind visitors to the website are unable to complete a transaction.

38. On Milkbread.com, blind customers are not aware if the desired products have been added to the shopping cart because the screen-reader does not indicate the type of product or quantity. Therefore, blind customers are essentially prevented from purchasing and product or booking any service on Milkbread.com.

39. Furthermore, Milkbread.com lacks accessible image maps. An image map is a function that combines multiple words and links into one single image. Visual details on this single image highlight different "hot spots" which, when clicked on, allow the user to jump to many different destinations within the website. For an image map to be accessible, it must contain alt-text for the various "hot spots." The image maps on Milkbread.com's menu page do not contain adequate alt-text and are therefore inaccessible to Plaintiff and the other blind individuals attempting to make a purchase. When Plaintiff tried to access the menu link in order to make a booking and purchase, she was unable to access it completely.

40. Moreover, the lack of navigation links on Defendants' website makes attempting to navigate through Milkbread.com even more time consuming and confusing for Plaintiff and blind consumers.

41. Milkbread.com requires the use of a mouse to complete a transaction. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual

activity of moving the mouse pointer from one visual spot on the page to another. Thus, Milkbread.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases and bookings on Milkbread.com.

42. Due to Milkbread.com's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at a Milkbread Restaurant. Some blind customers may require a driver to get to the Restaurant or require assistance in navigating the Restaurant. Unfortunately, Plaintiff could not even locate a Restaurant location on the website. By contrast, if Milkbread.com was accessible, a blind person could independently investigate products and programs and make purchases and/or reservations via the Internet as sighted individuals can and do. According to WCAG 2.0 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website. Plaintiff must tab through every navigation bar option and footer on Defendants' website in an attempt to reach the desired service. Thus, Milkbread.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently make purchases and bookings on Milkbread.com.

43. Milkbread.com thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use Milkbread.com and who would otherwise be able to fully and equally enjoy the benefits and services of Milkbread Restaurants in North Carolina and throughout the United States.

44. Plaintiff, Mary Conner, has made numerous attempts to access the menu and make a purchase on Milkbread.com, most recently on June 28, 2022, but was unable to do so independently because of the many access barriers on Defendants' website. These access

barriers have caused Milkbread.com to be inaccessible to, and not independently usable by, blind and visually-impaired persons. Amongst other access barriers experienced, Plaintiff was unable to read the food and drink menu and was unable to make a purchase of the Milkbread cap.

45. Moreover, Plaintiff has visited many restaurants in the past and enjoys exploring new restaurants. She is also aware that Milkbread sells famous milk bread doughnuts and crispy chicken. However, she was unable to obtain any information about the specific offerings because the online menu was not accessible. If Defendants' website was accessible, Plaintiff intends on visiting Defendants' Website in the future in order to read the food and drink menu and plan for future visits to the Milkbread Restaurants. In addition, Plaintiff intends to make additional purchases of merchandise in the future for delivery to her doorstep.

46. As described above, Plaintiff has actual knowledge of the fact that Defendants' website, Milkbread.com, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

47. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of Milkbread.com and the Milkbread.

48. Defendants engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

12

49. Defendants utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

50. Because of Defendants' denial of full and equal access to, and enjoyment of, the goods, benefits and services of Milkbread.com and Milkbread, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendants' conduct.

## CLASS ACTION ALLEGATIONS

51. Plaintiff, on behalf of herself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access Milkbread.com and as a result have been denied access to the enjoyment of goods and services offered in the Milkbread Restaurants, during the relevant statutory period."

52. Plaintiff seeks certification of the following North Carolina subclass pursuant to Fed.R.Civ.P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all legally blind individuals in the State of North Carolina who have attempted to access Milkbread.com and as a result have been denied access to the enjoyment of goods and services offered in the Milkbread Restaurants, during the relevant statutory period."

53. There are thousands of visually-impaired persons in North Carolina. There are approximately 8.1 million people in the United States who are visually-impaired. *Id.* Thus, the persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

54. This case arises out of Defendants' policy and practice of maintaining an inaccessible website denying blind persons access to the goods and services of Milkbread.com and the Milkbread Restaurants. Due to Defendants' policy and practice of failing to remove

access barriers, blind persons have been and are being denied full and equal access to independently browse, select and shop on Milkbread.com and by extension the goods and services offered through Defendants' website to Milkbread.

55. There are common questions of law and fact common to the class, including without limitation, the following:

(a) Whether Milkbread.com is a "public accommodation" under the ADA;

(b) Whether Milkbread.com is a "place or provider of public accommodation" under the laws of North Carolina;

(c) Whether Defendants, through their website, Milkbread.com, deny the full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the ADA; and

(d) Whether Defendants, through their website, Milkbread.com, deny the full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the law of North Carolina.

56. The claims of the named Plaintiff are typical of those of the class. The class, similar to the Plaintiff, is severely visually-impaired or otherwise blind, and claims Milkbread has violated the ADA, and/or the laws of North Carolina by failing to update or remove access barriers on their website, Milkbread.com, so it can be independently accessible to the class of people who are legally blind.

57. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants has acted or refused to act on grounds generally applicable

14

to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

58. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

59. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

60. References to Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

**FIRST CAUSE OF ACTION**
(Violation of 42 U.S.C. §§ 12181 *et seq*. – Title III of the Americans with Disabilities Act)

61. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 60 of this Complaint as though set forth at length herein.

62. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability."  42 U.S.C. § 12181(b)(2)(D)(I).

15

63. The Milkbread Restaurants, located in North Carolina are a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7)(B). Milkbread.com is a service, privilege or advantage of Milkbread. Milkbread.com is a service that is by and integrated with the Milkbread Restaurants.

64. Defendants are subject to Title III of the ADA because they own and operate the Milkbread Restaurants.

65. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

66. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

67. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

68. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated

16

or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

69. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendants' business nor result in an undue burden to Defendants.

70. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, and the regulations promulgated thereunder. Patrons of Milkbread who are blind have been denied full and equal access to Milkbread.com, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

71. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

72. As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Milkbread.com and Milkbread in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* and/or its implementing regulations.

73. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and members of the proposed class and subclass will continue to suffer irreparable harm.

74. The actions of Defendants were and are in violation of the ADA, and therefore Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

75. Plaintiff is also entitled to reasonable attorneys' fees and costs.

76. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
(Declaratory Relief)

77. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 76 of this Complaint as though set forth at length herein.

78. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendants deny, that Milkbread.com contains access barriers denying blind customers the full and equal access to the goods, services and facilities of Milkbread.com and by extension Milkbread Restaurants, which Milkbread owns, operates and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, prohibiting discrimination against the blind.

79. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

18

a) A preliminary and permanent injunction to prohibit Defendants from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*;

b) A preliminary and permanent injunction requiring Defendants to take all the steps necessary to make its website, Milkbread.com, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Milkbread.com is readily accessible to and usable by blind individuals;

c) A declaration that Defendants own, maintain and/or operate their website, Milkbread.com, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*;

d) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed class for violations of their civil rights under Federal and State laws;

f) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

g) For pre- and post-judgment interest to the extent permitted by law; and

h) For such other and further relief which this court deems just and proper.

This is the 20 day of July, 2022

                              LAW OFFICES OF SANJAY R. GOHIL, PLLC

                              By:    /s/ Sanjay R. Gohil
                                    Sanjay R. Gohil
                                    NC State Bar No. 24250
                                    2435 Plantation Center Drive, Suite 200
                                    Matthews, NC 28105
                                    Telephone: (704) 814-0729
                                    Facsimile: (704) 814-0730
                                    E-mail: srg@gohillaw.com

                                    Counsel for Plaintiff


Of Counsel:

SHAKED LAW GROUP, P.C.

By:*/s/Dan Shaked*
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
e-mail: ShakedLawGroup@Gmail.com